At a point on Seventieth Street in Caddo Parish, Louisiana, approximately 150 feet east of the Jewella Road, there was discovered about 7 o'clock of the morning of January 15, 1938, a parked Lincoln Zephyr sedan, the rear wheels of which were resting in the shallow ditch that runs along the street's north side. The automobile's motor was running, all of the windows were closed, the front and rear lights burned, and the end of the exhaust pipe was clogged with mud.
The 30 foot wide and gravelled Seventieth Street, as well as the mentioned adjoining ditch, was wet, a rain that occurred a short time previously being responsible for this condition. Cold weather prevailed.
In the rear portion of the machine when so discovered, that is behind the front seat, were Dorothy Graham Brocato, age 21, and M.L. Mullen, Jr., who enjoyed the age of 25. The former sat on the floor with her back against the right door, while the latter reclined on the seat. Both were dead.
Their deaths, according to the coroner of Caddo Parish, who made an investigation, resulted from the inhalation of carbon monoxide that emanated from the automobile's engine. A cherry pink color, characteristic of carbon monoxide poisoning, prevailed through the entire body of each, this indicating the inhaling of the gas and its becoming mixed and circulated with the blood. On neither body was there found any bruises or other evidence of trauma; and both were fully clothed.
The automobile, owned by M.L. Mullen, Sr., was covered by a policy of liability insurance, containing what is commonly termed the omnibus clause, issued by the American Mutual Liability Insurance Company. Its use by M.L. Mullen, Jr., one of the decedents, was with the consent and permission of the owner.
Dorothy Graham Brocato was the wife of Sam L. Brocato, but for several months prior to her death she had been living with her mother, Mrs. Mary E. Graham, separate and apart from her husband.
Sam Brocato, together with the said Mrs. Mary E. Graham to whom he assigned a one-half interest in and to his claim, instituted this suit for the purpose of recovering the damages occasioned him by the death of his said wife, they being itemized as the loss of her love, affection and companionship, the sustaining of mental suffering and shock, funeral expenses, and the cost of a cemetery lot. The action is prosecuted against the above named insurer of the automobile.
It is alleged in the petition of plaintiffs, among other things, that: M.L. Mullen, Jr., backed or drove the automobile, in which the mentioned young lady was a guest passenger, into the shallow ditch. Its rear end went into the mud; and this resulted in the sticking of the back wheels and the blocking of the exhaust pipe so that the regular expulsion of the carbon monoxide from the motor was impossible. After descending onto and making an inspection of the ground, he re-entered the *Page 655 
car and sat on the back seat with his companion, awaiting assistance from some passerby. He left the lights burning, the motor running and all windows closed. The exhaust pipe being clogged with mud, the deadly carbon monoxide entered the car's interior and asphyxiated the occupants.
Plaintiffs further allege that:
"* * * The death of Dorothy Graham Brocato was caused by the following specific acts of negligence on the part of M.L. Mullen, Jr.:
"(a) His negligence in backing or driving said car off 70th Street into the ditch, thereby clogging the exhaust pipe with mud.
"(b) His failure to clear the mud out of said exhaust pipe after having known of said condition or after having been in a position to have known of said clogged exhaust pipe.
"(c) His leaving the motor running while waiting for aid.
"(d) His leaving the motor running with all the windows closed on the car."
The defense of the automobile's insurer, the sole defendant in the case, is three fold, namely: (1). M.L. Mullen, Jr., was guilty of no negligence that proximately caused the accident. (2). Alternatively, there was contributory negligence on the part of Dorothy Graham Brocato. (3). The insured failed to notify defendant of the accident within a reasonable time.
The district court, after trial of the case, ruled in favor of defendant; and plaintiffs appealed.
There were no eye witnesses to the unfortunate occurrence, and the identity of the driver of the car when it was backed into the ditch is not conclusively established. As before shown, neither of the decedents was found in the front seat. Presumably Mullen was performing the driving, for the mother of the young lady stated that the latter could not operate a car; and the husband testified: "I let her try and she could not very well drive."
If it be assumed that Mullen was the operator at the time, we think that he was negligent in driving from the road. Obviously, a turn around was being attempted. But Seventieth Street at the locus is approximately 30 feet in width and isgravelled; and there was sufficient room on its surface for that movement. In fact, as the record shows, others had successfully performed it; and with careful driving, Mullen could have achieved a similar result.
However, the negligence arising from the backing into the ditch was not the immediate cause of the deaths. It was only remotely connected therewith. The occupants were in no manner bruised or otherwise injured when the car rolled from the road's shoulder. They died solely because of their inhalation of the carbon monoxide. If, after the car's encountering the ditch, they had kept open the windows or silenced the motor the disaster would have been averted. It occurred by reason of their remaining in the car, under the existing and described circumstances.
It is argued by plaintiffs' counsel that Mullen was "negligent in leaving his motor running and the windows up after he knew that the exhaust pipe was clogged with mud because he had been around to the back of the car and made an investigation and knew of the angle of the car, and after having those facts before him if he did not know of the condition of the exhaust pipe he was even more negligent in failing to determine the condition of the clogged exhaust pipe."
The record does not definitely disclose that Mullen knew of the clogged condition of the pipe. It does show that foot prints were visible on the ground around the car, one witness' testimony being that he saw "prints of little shoes and men's shoes"; and this indicates that both occupants surveyed the situation from without.
But whether one or both or neither of the decedents was aware of such clogged condition, it seems to us that both were grossly imprudent or careless in remaining in the closed sedan with the engine functioning, knowing that the rear portion of the vehicle was resting in a ditch. There was no evidence of a struggle that might indicate compulsion to stay there; and they were persons of full age, presumably sound in mind, and should have realized the possible consequences of their act.
Furthermore, it is our opinion that their imprudence or carelessness, shared jointly by them, amounted to negligence that was an efficient and proximate cause of their deaths. Hence, it must be said that a recovery of damages in this case was properly denied. *Page 656 
Our announced conclusion makes unnecessary a consideration of the third defense which is that no notice of the accident was seasonably given the insurer.
The judgment is affirmed.
DREW and TALIAFERRO, JJ., concur.